UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV-00305-GNS-CHL

TAMARA ERNSTER                                                                                                PLAINTIFF

v.

CITY OF MT. WASHINGTON, KENTUCKY, et al.                                                  DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Leave to File Excess Pages (DN 35) and Motion for Summary Judgment (DN 36). The motions are ripe for adjudication.

**I.       STATEMENT OF FACTS AND CLAIMS**

Plaintiff Tamara Ernster ("Ernster") sought medical care for an allergic reaction, but quickly found herself detained by police due to concerns about her mental health. On May 26, 2022, Ernster was exposed poison sumac. (Ernster Dep. 24:17-25:4, Aug. 7, 2024, DN 36-2). Ernster knew she was allergic to poison oak and poison ivy, so after she began itching, she administered her EpiPen. (Ernster Dep. 25:5-24). When her symptoms worsened, her neighbor accompanied her to the Norton Immediate Care Center where Ernster was told that her oxygen was low. (Ernster Dep. 37:7-23). Ernster checked herself out against medical advice and believes she commented, "[I]f I'm going to die, I'm not going to die here." (Ernster Dep. 41:6-8, 42:15-16, 50:3-5). The parties dispute Ernster's behavior in the immediate care center, but Ernster does not contest that EMS and police were called and informed that she was suicidal. (Defs.' Mem. Supp. Mot. Summ. J. 2-16, DN 36-1; Pl.'s Resp. Defs.' Mot. Summ. J. 6-9, 11, DN 39; Estridge Dep. 9:7-15, Feb. 26, 2025, DN 36-5; Defs.' Mot. Summ. J. Ex. I, at 1, DN 36-10 [hereinafter Officers' Memo]).

Two Mt. Washington Police Department ("MWPD") officers—Defendants Sergeant Mark Batson ("Batson") and Officer Jesse Bratcher ("Bratcher") (jointly, "Officers")—reported to the scene. (Officers' Memo 1). Ernster alleges that, even though she was compliant, an officer pushed her into a wall and kicked her before handcuffing her and placing her in the back of a police car. (Ernster Dep. 66:20-70:7). The Officers assert that Ernster was erratic, disoriented, and hostile throughout their encounter; they claim they detained Ernster because they were concerned for her safety. (Officers' Memo 1-2).

Based on these events, Ernster sued all MWPD officers who were employed on the day of the encounter and, via respondeat superior, Defendant City of Mt. Washington, Kentucky ("the City"). (Compl. ¶¶ 2-46, DN 1-1). She filed suit in Bullitt Circuit Court (Kentucky) alleging various violations of federal and state law, and Defendants removed the matter to this Court. (Compl. ¶¶ 65-139; Notice Removal, DN 1). Ernster then filed the Amended Complaint and by agreed order dismissed her claims against all Defendants except the City, Batson, and Bratcher (collectively, "Defendants"). (Am. Compl., DN 6; Agreed Order 2, DN 15).

## II. JURISDICTION

The Court has jurisdiction over this matter based upon federal question jurisdiction. *See* 28 U.S.C. § 1331. The Court also has supplemental jurisdiction over the pendent state-law claims. *See* 28 U.S.C. § 1367.

## III. DISCUSSION

### A. Defendants' Motion for Leave to File Excess Pages

Defendants moved for leave to file a memorandum in support of their motion for summary judgment in excess of twenty-five pages. (Defs.' Mot. Leave File Excess Pages, DN 35). Defendants argue that, because Ernster raises multiple claims and Defendants present a qualified

2

immunity defense, extensive briefing is required. (Defs.' Mot. Leave File Excess Pages 1). Ernster does not object. This motion is therefore granted.

### B.  Defendants' Motion for Summary Judgment

Defendants seek summary judgment on all claims. (Defs.' Mem. Supp. Mot. Summ. J. 19-30). In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying the evidence demonstrating an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the nonmoving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable for the nonmoving party, the nonmoving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the nonmoving party must present facts proving that a genuine factual dispute exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

#### 1.  *Fourth Amendment Claims*

Ernster brings two claims under the Fourth Amendment: unlawful seizure and excessive force. (Am. Compl. 12-15). Defendants assert that both claims fail because the Officers are entitled to qualified immunity. (Defs.' Mem. Supp. Mot. Summ. J. 19-25, 26-27).

3

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citation omitted). To determine whether a defendant is entitled to qualified immunity, a court must consider: (1) whether "based on applicable law and the facts viewed in the light most favorable to the plaintiff, has a constitutional violation occurred"; and (2) if so, whether "the constitutional right [was] 'clearly established' at the time of violation." *Penman v. Correct Care Sols.*, No. 5:18-CV-58-TBR, 2018 WL 6220921, at *8 (W.D. Ky. Nov. 28, 2018) (citing *Bell v. Johnson*, 308 F.3d 594, 601 (6th Cir. 2002); *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

A right is clearly established if "the defendants had fair warning that their actions were unconstitutional." *Goodwin v. City of Painesville*, 781 F.3d 314, 325 (6th Cir. 2015) (internal quotation marks omitted) (citation omitted). "In Fourth Amendment cases, it is especially difficult for an officer to apply the relevant legal doctrine to the ongoing situation in front of him." *Rudolph v. Babinec*, 939 F.3d 742, 755 (6th Cir. 2019) (Thapar, J., concurring in part and dissenting in part) (citing *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)). "Thus, the Supreme Court has repeatedly 'stressed the need to identify *a case* where an officer act[ed] under similar circumstances' and was found to violate the Fourth Amendment." *Id.* at 755 (Thapar, J., concurring in part and dissenting in part) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018)).

    **a.**    *Unlawful Seizure*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. An officer may not "physically restrain an individual merely to assess his mental health" unless the officer "ha[s]

4

probable cause to believe that the person seized poses a danger to himself or others." *Ziegler v. Aukerman*, 512 F.3d 777, 783 (6th Cir. 2008). Probable cause requires only "a probability or substantial chance of dangerous behavior, not an actual showing of such behavior." *Id.* (internal quotation marks omitted) (citation omitted). "Courts evaluate the existence of probable cause from the perspective of a reasonable and objective person in the position of the seizing official." *Id.* (citation omitted). "If the circumstances, viewed objectively, support a finding of probable cause [then] the arresting officer's actual motives are irrelevant." *Id.* (quoting *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988)).

Probable cause may be supported by a third party's report of suicidal intentions or dangerous behavior. *Id.* Courts must determine, however, "whether a reasonable officer would question the veracity of a suicide report based on the facts at the scene . . . ." *Rudolph*, 939 F.3d at 747. So, when an "unrelated third party reported that a man had tied himself to railroad tracks and might be attempting to commit suicide[,]" but officers observed a man who was clearly not tied to the tracks and was compliant with the officers' orders, "although the officers had reason to arrive at the scene based on the attempted-suicide report, once they arrived the facts did not give rise to probable cause to execute a mental-health seizure." *Id.* (citing *Fisher v. Harden*, 398 F.3d 837, 842 (6th Cir. 2005)).

Reports from medical professionals, however, carry more weight than that of a random passerby; a medical professional is a "credible source, if not the most credible source . . . ." *Ziegler*, 512 F.3d at 783. In *Ziegler*, a hospital's 911 call, along with a clinical certificate, provided probable cause to detain the plaintiff, so "the officer's own observations of [the] [p]laintiff [were] of little importance." *Id.* Moreover, the Sixth Circuit indicated that the call alone may have been sufficient. *Id.* ("In reviewing these facts together, and perhaps even separately, Officer Jonoshies

5

had more than enough information to reasonably believe that there was a 'substantial chance' that Mrs. Ziegler posed a dangerous risk to herself or others.").

In this instance, a nurse at the immediate care center told EMS responders that Ernster was suicidal. (Stuart Dep. 11:11-15, 15:25-16:5, Feb. 26, 2025, DN 36-6). EMS then requested police assistance through dispatch. (Stuart Dep. Feb. 26, 2025, at 12:14-18). When the Officers arrived, EMS informed them that Ernster was suicidal, a fact which Ernster does not contest. (Bratcher Dep. 14:18-22, 15:17-21, Nov. 5, 2024, DN 36-3; Batson Dep. 12:3-6, Nov. 5, 2024, DN 36-4; Pl.'s Resp. Defs.' Mot. Summ. J. 11). Even assuming Ernster was not genuinely suicidal, and only remarked that if she was "going to die, [she was] not going to die there," that is not determinative of probable cause. (Ernster Dep. 49:22-50:18); *Ziegler*, 512 F.3d at 783 ("Just as actual innocence will not render invalid an arrest that is properly based upon probable cause that criminal activity was occurring, a mental health seizure can rest upon probable cause even when the person seized does not actually suffer from a dangerous mental condition." (citation omitted)). Thus, there is no genuine dispute of material fact.

"It is clearly established law 'that in the context of a mental health seizure an officer must have probable cause to believe that the person seized poses a danger to [her]self or others.'" *Rudolph*, 939 F.3d at 747 (quoting *Fisher*, 398 F.3d at 842). Still, if an officer could reasonably believe he had probable cause, he is protected by qualified immunity. *Id.* at 756 (Thapar, J., concurring in part and dissenting in part). Ernster has not identified a specific case where an officer conducted a mental health seizure, relying on the report of a medical professional, and was found to violate the Fourth Amendment. Instead, Ernster relies on *Rudolph v. Babinec*, which cites *Fisher v. Harden*. The courts in both cases held that an officer was not permitted to solely rely on a third party's report when "a reasonable officer would question the veracity of a suicide report

6

based on the facts at the scene of the wellness check that is done in response to the suicide report." *Rudolph*, 939 F.3d at 747. Neither of these cases, however, involved the report of a medical professional.

Because the Officers received a report from EMS responders that Ernster was suicidal, a reasonable officer could believe that Ernster posed a danger to herself. As in *Ziegler*, reports from the medical professionals are highly credible and sufficiently established probable cause for a mental health seizure in this instance, notwithstanding the patient's protestations to the contrary. *Ziegler*, 512 F.3d at 784. Because it is not clearly established that the report of an EMS responder is insufficient to provide probable cause for a mental health seizure, the Officers are entitled to qualified immunity. Thus, summary judgment is granted in favor of Defendants as to Ernster's illegal seizure claim.

### b. *Unreasonable Force*

An officer may not use excessive force during an arrest or a stop. *Graham v. Connor*, 490 U.S. 386, 394 (1989). A court utilizes the "objective reasonableness" standard when evaluating an excessive force claim. *See Chappell v. City of Cleveland*, 585 F.3d 901, 908 (6th Cir. 2009) (citing *Graham*, 490 U.S. at 396). This test asks "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 387 (citation omitted). Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citation omitted).

Thus, courts must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* (citation omitted). The Supreme Court directed courts to consider a nonexhaustive list of factors for this

7

inquiry: (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Notably, the parties present two very different versions of Ernster's interaction with the Officers. According to Ernster, she was separated from her neighbor by an EMS responder after they exited the immediate care center. (Ernster Dep. 65:19-23). When Batson approached and Ernster advised that she had checked herself out, Batson told her "We need to take you to the Emergency Room." (Ernster Dep. 66:3-19). Ernster replied she did not need to go to the hospital and began to walk to her car. (Ernster Dep. 66:22-67:7). Without saying anything else, Batson used his "[h]ands, thumbs, fingers, boots, knees" to push her against the wall—including a kick to the back of her right leg despite Ernster not physically resisting. (Ernster Dep. 29:6-8, 30:23-31:11, 66:22-67:1, 67:8-20). Batson then handcuffed her and placed her in the back of the police car. (Ernster Dep. 67:21-25). When Ernster asked to be uncuffed, Batson told her, "Shut the fuck up, you [b]itch. [y]ou [m]eth head." (Ernster Dep. 71:19-25). The encounter caused extensive bruising and has negatively impacted Ernster's mental health. (Ernster Dep. 27:17-33:10, 87:5-10, 93:12-94:9).

Under these facts as related by Ernster, a jury could find that Batson used excessive force. Ernster was not suspected of a crime, did not physically resist, and posed no immediate threat, so her right to be free from excessive force under these circumstances is clearly established. For example, the Sixth Circuit applied the *Graham* factors in *Rudolph*, another mental health seizure case, and found that the officer did not have qualified immunity for the plaintiff's excessive force claim:

> Construing the facts in Rudolph's favor, the officers slammed her face and body into a wall, pulled her out of her house, and dragged her down a long driveway so roughly that she needed multiple surgeries. And all this even though she alleges that she complied with their orders, was not attempting to flee, and in that moment posed no apparent threat to herself or others.

*Rudolph*, 939 F.3d at 752. Thus, any reasonable officer should know he cannot lawfully push and kick a person who is not resisting to execute a mental health seizure. Although Defendants deny Ernster's allegations and claim she was not compliant—Defendants allege Ernster was screaming, attempting to walk away, and generally acting hostile and disoriented—there are genuine issues of material fact which must be resolved by a jury. Resolution of this claim on summary judgment is therefore inappropriate.

### 2.    *Remaining Claims*

Regarding Ernster's remaining claims, Defendants argue that they are entitled to summary judgment on the basis of abandonment and qualified official immunity. (Defs.' Mem. Supp. Mot. Summ. J. 30; Defs' Reply Mot. Summ. J. 7-8). First, "[t]his Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (citing *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment); *Clark v. City of Dublin*, 178 F. App'x 522, 524-25 (6th Cir. 2006) (recognizing that the failure to respond properly to motion for summary judgment arguments constitutes abandonment of a claim); *Conner v. Hardee's Food Sys.*, 65 F. App'x 19, 24-25 (6th Cir. 2003); *Colston v. Cleveland Pub. Libr.*, No. 1:12-CV-204, 2012 WL 3309663, at *2 n.2 (N.D. Ohio Aug. 13, 2012) (deeming a claim

9

abandoned and granting summary judgment when a plaintiff "did not respond or even mention th[e] claim in her oppositions to Defendants' motions for summary judgment")).

Second, "Kentucky provides qualified immunity from tort liability for public officers and employees for '(1) discretionary acts or functions . . . ; (2) in good faith; and (3) within the scope of the employee's authority.'" *Howell v. Sanders*, 668 F.3d 344, 355 (6th Cir. 2012) (quoting *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)). Notably, Kentucky's qualified immunity standard includes the subjective element of good faith, an element the Supreme Court of the United States rejected from the federal analogue. *Howell*, 668 F.3d at 355 (citing *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 474 (Ky. 2006)). In this context, "'good faith' is just a presumption that exists absent evidence of 'bad faith.'" *Sloas*, 201 S.W.3d at 475. "Once the officer or employee has shown *prima facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Yanero*, 65 S.W.3d at 523. Bad faith may be shown:

> [1] if an official *knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or [2] if he took the action *with the malicious intention* to cause a deprivation of constitutional rights or other injury . . . .

*Id.* (second alteration in original) (internal quotation marks omitted) (quoting *Harlow*, 457 U.S. at 815).

### a. Failure to Intervene and Conspiracy under Section 1983

Defendants argue that Ernster has abandoned her Section 1983 claims for failure to intervene and conspiracy. (Defs.' Reply Mot. Summ. J. 7, DN 40). Indeed, the phrases "failure to intervene" and "conspiracy" do not appear in her response. (Pl.'s Resp. Defs.' Mot. Summ. J.). Ernster only addresses "two essential questions": "(1) was Defendants Batson's and Bratcher's

mental health detention of Ernster unlawful; and (2) did Defendants Batson and Bratcher use unreasonable force in effectuating said mental health detention?" (Pl.'s Resp. Defs.' Mot. Summ. J. 1-2). This is not responsive to Defendants' arguments that the failure to intervene and conspiracy claims do not rest entirely on the resolution of her Fourth Amendment claims. *See Craft v. Billingslea*, 459 F. Supp. 3d 890, 913 (E.D. Mich. 2020) ("Generally speaking, a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997))); *Rieves v. Town of Smyrna*, 67 F.4th 856, 862 (6th Cir. 2023) ("To prove conspiracy, plaintiffs must show (1) that there was a single plan, (2) that the alleged coconspirator shared in the general conspiratorial objective, and (3) that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." (internal quotation marks omitted) (citation omitted)). Thus, Ernster abandoned these claims.

### b.     Assault and Battery

Defendants assert that Ernster has also abandoned her assault and battery claims. (Defs.' Reply Mot. Summ. J. 7). Defendants' argument for summary judgment on these claims relies on Defendants' contention that the Officers did not use excessive force. (Defs.' Mem. Supp. Mot. Summ. J. 27). Thus, Ernster's arguments as to excessive force are responsive and Ernster has not abandoned this claim. (Pl.'s Resp. Defs.' Mot. Summ. J. 12-13). As stated above, there is a genuine issue as to material facts that prevents summary judgment regarding excessive force. Summary judgment on these claims is therefore inappropriate.

### c. False Arrest

Defendants next argue that Ernster abandoned her false arrest claim based on their contention that the Officers had probable cause to seize Ernster. (Defs.' Mem. Supp. Mot. Summ. J. 28; Defs.' Reply Mot. Summ. J. 7). Because Ernster's arguments as to illegal seizure are responsive, Ernster has not abandoned this claim. (Pl.'s Resp. Defs.' Mot. Summ. J. 10-12).

Regardless, the Officers are protected by qualified official immunity under state law. As discussed above, the Officers had probable cause to detain Ernster based on the report of suicidal intentions from a medical professional. Deciding to detain an individual is "clearly [a] discretionary act[] within the scope of [an officer's] authority as a police officer." *Woosley v. City of Paris*, 591 F. Supp. 2d 913, 922 (E.D. Ky. 2008). So, because the decision to seize Ernster was a discretionary act within the scope of the Officers' authority, the burden shifts to Ernster to demonstrate bad faith. *See Poynter v. Whitley Cnty. Det. Ctr.*, 722 F. Supp. 3d 745, 759 (E.D. Ky. 2024). Ernster does not meet that burden, as she does not address Defendants' argument that no reasonable jury could find that the Officers acted in bad faith by seizing her. In fact, she does not discuss qualified official immunity at all in the context of the mental health seizure. Thus, the Officers are entitled to qualified official immunity on Ernster's false arrest claim.

### d. Outrageous Conduct, Negligence, and Civil Conspiracy

Defendants assert that Ernster has abandoned her claims for outrageous conduct, negligence, and civil conspiracy. (Defs.' Reply Mot. Summ. J. 7). These phrases do not appear in Ernster's response and her Fourth Amendment arguments are not responsive to Defendants' contentions that these claims fail. *See Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. App. 1993) ("[W]here an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed,

and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie."); *Downey v. Jaehnigen*, No. 2019-CA-0693-MR, 2021 WL 1583168, at *1 (Ky. App. Apr. 23, 2021) ("[I]n a situation where a claim is made against an officer for excessive force, negligence is not an issue."); *Gugliotta v. Oldham Cnty. Bd. of Educ.*, No. 2017-CA-000417-MR, 2018 WL 2171347, at *4 (Ky. App. May 11, 2018) ("In order to prevail on a claim of civil conspiracy, the proponent must show an unlawful/corrupt combination or agreement among the alleged conspirators to engage in some concerted action in order to perpetuate an unlawful act." (citing *Montgomery v. Milam*, 910 S.W.2d 237 (Ky. 1995))). Accordingly, Ernster has abandoned these claims which will be dismissed.

### e. Claims Against Bratcher

Defendants also argue that Ernster has abandoned her claims against Bratcher. (Defs.' Reply Mot. Summ. J. 1). In her response, Ernster only argues that Batson used excessive force. (Pl.'s Resp. Defs.' Mot. Summ. J. 10). Because Ernster does not contest or respond to Defendants' assertion that Bratcher made no physical contact with her, she has abandoned her excessive force, assault, and battery claims against Bratcher.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion for Leave to File Excess Pages (DN 35) is **GRANTED**, and Defendants' Motion for Summary Judgment (DN 36) is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is granted with respect to Plaintiff's claims against Defendants for illegal seizure, failure to intervene, conspiracy, false arrest, outrageous conduct, negligence, and civil conspiracy, as well as all claims against Defendant Jesse Bratcher. These claims are **DISMISSED WITH PREJUDICE**.

Plaintiff's claims for excessive force, assault, and battery against Defendant Mark Batson and Defendant City of Mt. Washington remain.

cc: counsel of record

Case 3:23-cv-00305-GNS-CHL   Document 41   Filed 11/20/25   Page 14 of 14 PageID #: 653